# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Travis Day, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 941 C.D. 2023 |
| | : | SUBMITTED: October 8, 2024 |
| Pennsylvania Commission on | : | |
| Crime and Delinquency, | : | |
| Respondent | : | |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                    HONORABLE LORI A. DUMAS, Judge
                    HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                    **FILED:  November 18, 2024**

In this matter, the Executive Director of the Pennsylvania Commission on Crime and Delinquency issued by letter an adjudication rejecting a proposed adjudication and order that recommended the reinstatement of Petitioner Travis Day to the Pennsylvania Sheriff and Deputy Sheriff Training Academy.  The Executive Director's final decision contains no findings or reasons for his determination and is, therefore, not compliant with Section 507 of the Administrative Agency Law, 2 Pa.C.S. § 507 (adjudications "shall contain findings and the reasons for the adjudication").  We therefore vacate and remand the matter to the Commission for issuance of a compliant adjudication.

The background of the matter is as follows.  In August 2018, Petitioner, a deputy sheriff employed by Westmoreland County, was dismissed for alleged violations of the Academy's code of conduct and other provisions of its training

manual. There was a back and forth of correspondence communicating the expulsion and Petitioner's objections to same, but the notice of its occurrence was communicated separately both by the Penn State Justice and Safety Institute (JASI), which operates the Academy for the Commission, to the Westmoreland County Sheriff, and by Commission staff to Petitioner and the Westmoreland County Sheriff. The letter from JASI's associate director stated that Petitioner was dismissed based upon the following: (1) sleeping in class, for which Petitioner had received a verbal warning; (2) calling a fellow classmate a "snitch," for which Petitioner had received a written warning; (3) neglecting to remove a shotgun and ammunition from his assigned hotel room upon checkout; and (4) harassing a female deputy. (Board Ex. 26, Reproduced R. "R.R." at 458-59.[1]) The letter from the Commission indicated that Petitioner was dismissed "for a pattern of misconduct culminating in irresponsible behavior with a personal firearm and charges of harassment of another student (deputy)." (Board Exs. 28 and 29, R.R. at 462-63.)

Petitioner appealed his dismissal to the Sheriff and Deputy Sheriff Education and Training Board, which administers the Sheriff and Deputy Sheriff Education and Training Program (i.e., the Academy) "with the review and approval of the [C]ommission[.]" Section 7424 of Title 44 of the Pennsylvania Consolidated Statutes,[2] 44 Pa.C.S. § 7424 (concerning powers and duties of the Board). The Board

---

[1] Petitioner has paginated his reproduced record with Arabic numerals which are not "followed . . . by a small a," as required by Rule 2174 of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 2174.

[2] In enacting the current enabling legislation for the Board as a consolidated statute, the General Assembly chose to indicate that "44 [Pennsylvania Consolidated Statutes, Chapter 74, Subchapter C], is a continuation" of the Board's previous enabling legislation, the Sheriff and Deputy Sheriff Education and Training Act, Act of February 9, 1984, P.L. 3, *formerly* 71 P.S. §§ 2101 – 2109, repealed by Act of November 25, 2020, P.L. 1263, but for unexplained reasons chose **(Footnote continued on next page…)**

denied Petitioner's appeal.  Petitioner requested a hearing, which was assigned by the Acting Executive Director to a Hearing Officer.  A video hearing occurred on May 24, 2022.

At the hearing, the Board, captioned as respondent, presented testimony and documentary evidence.  Petitioner, represented by counsel, cross-examined the Commission's witnesses and presented his own documentary evidence.  Petitioner did not testify.  The Hearing Officer issued a proposed adjudication and order recommending that the Board's decision be reversed and that Petitioner be reinstated.  The Hearing Officer's proposed adjudication included 44 enumerated findings of fact (R.R. at 75-82) and 3 conclusions of law (R.R. at 82), as well as a discussion (R.R. at 83-87).

With regard to the shotgun incident, the Hearing Officer's discussion went as follows:

> Upon checking out of the hotel upon a weekend break from training, Petitioner left behind in his hotel room a shotgun and ammunition.  [The Board] treated this as [u]nprofessional [c]onduct and a violation of section 9.3(b)(4) of the [p]articipant's [m]anual.  The [c]ode of [c]onduct defines [u]nprofessional conduct as "on or off campus conduct that reflects poorly upon the image of the Board and the Sheriffs of the Commonwealth."  Section 9.3(b)(4) of the [p]articipant's [m]anual provides that prohibited behavior includes "placing the Academy or the participant's sheriff in an embarrassing position by his/her conduct."  [The Board's] [p]articipant's [m]anual and [c]ode of [c]onduct do not specifically address off-campus use of firearms.  However, section IV.D of the [c]ode of [c]onduct provides that security of individual weapons is the responsibility of the trainee and trainees should follow common sense, safety practices, and departmental policy,

---

not to assign the previous title to the new enactment or provide a substitute. *See* Section 3 of Act of February 9, 1984, P.L. 3.

and section 5.7.h of the [p]articipant's [m]anual notifies that the hotel provides lock boxes for participants to secure weapons during the firearms rotation or if their sheriff's office requires them to carry their weapons off duty. Leaving a shotgun in a room along with a bag of ammunition constitutes improper hotel conduct. However, the [H]earing [O]fficer is not able to say with confidence that a deputy sheriff who has brought a firearm with him and left it and ammunition behind in the hotel upon checking out over the weekend and reported it to the hotel such that the weapon and ammunition were seized and secured without anyone—including the family that had next checked into the room—being aware of the incident has "reflected poorly upon the image of the Board and the Sheriffs of the Commonwealth" or has "place[d] the Academy or the participant's sheriff in an embarrassing position by his conduct." [The Board] presented no evidence about the appearance or consequence of Petitioner's actions. Without such additional evidence, the [H]earing [O]fficer finds that [the Board] has not shown that Petitioner engaged in [u]nprofessional [c]onduct or violated section 9.3(b)(4) of the [p]articipant's [m]anual by leaving a shotgun and ammunition in the hotel room.

(Proposed Adjudication at 12-13, R.R. at 84-85.)

With regard to the allegation that Petitioner harassed a female deputy, the Hearing Officer found a lack of evidence to substantiate the allegation:

In order to establish that Petitioner harassed Female Deputy, [the Board] did not present any direct evidence of harassment by Petitioner, such as testimony of Female Deputy or testimony from anyone else who may have observed any harassment. Nor did it present any other evidence such as a specific report by her. Instead, [the Board's] witness testified that there had been a report. In order to substantiate this report, [the Board] first offered into evidence the magisterial district justice docket sheet showing Petitioner had been charged by the Penn State University Police with harassment for an incident that occurred on August 10, 2018. However, this charge was

4

withdrawn. This criminal matter is thus not substantial evidence of anything done by Petitioner.

[The Board] also offered into evidence both the [magisterial district justice] docket sheet of filing of later charges and the court of common pleas docket sheet showing that Petitioner had ultimately pled no contest to a summary charge of disorderly conduct for an incident that occurred on July 26, 2018. Accepting that a summary offense conviction establishes the elements of the offense, this no contest plea establishes only that, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, Petitioner made an unreasonable noise. *See*[]18 Pa.C.S. § 5503(a)(2). Although there is no definition of the term, [the Board's] [c]ode of [c]onduct provides that harassment includes physical harassment (including unwanted physical contact or assault), verbal harassment (including name-calling, innuendoes, threats, lewd comments, or jokes), or visual harassment (including obscene or insulting gestures, displays, pictures, or materials). [The Board's] [p]articipant's [m]anual provides that workplace harassment can take many forms and could be comprised of words, signs, offensive jokes, cartoons, pictures, posters, e-mail jokes or statements, pranks, intimidation, physical contact, and violence. Again, the [p]articipant's [m]anual does not define harassment, but gives many examples—all of which except for sexual harassment include racial or ethnic animus. Absent speculation, making an unreasonable noise with intent to cause public inconvenience, annoyance or alarm, and a single act of blocking someone's path, without more, does not establish harassment.

[The Board] conceded that there was no allegation that Petitioner had ever made physical contact with Female Deputy[] or had fondled or patted or kicked her or touched her except that he physically blocked her path. Even if Petitioner's criminal disorderly conduct was directed towards Female Deputy, without speculation this evidence does not in any way establish unwanted sexual advances, requests for sexual favors[,] or other conduct of a sexual nature that has the purpose or effect of unreasonably

5

interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment, as "sexual harassment" is described in the [c]ode of [c]onduct of [the Board's] [p]articipant's [m]anual. Nor does it establish unwelcome sexual advances, requests for sexual favors, or other unwelcome verbal or physical contact of a sexual nature when such conduct creates an offensive, hostile, and intimidating working environment and prevents an individual from effectively performing the duties of her position, as "sexual harassment" is described in [the Board's] [p]articipant's [m]anual. The [H]earing [O]fficer finds that [the Board] has failed to establish that Petitioner harassed Female Deputy.

(*Id*. at 13-15, R.R. at 85-87.)

With regard to the other grounds identified in JASI's dismissal letter, and the decision to dismiss Petitioner, the Hearing Officer stated:

Of the grounds identified in its letter notifying Petitioner's sheriff that [the Board] had dismissed Petitioner from the Academy, [the Board] has established at most that Petitioner slept in class and that he called another student deputy a "snitch." None of the other identified grounds for dismissal have been established. Because [the Board] itself chose to issue a verbal warning for sleeping in class and then chose to issue a written warning for calling another deputy a snitch, the [H]earing [O]fficer concludes that by dismissing Petitioner from the Academy without any additional grounds for discipline, [the Board's] judgment was manifestly unreasonable.

[The Board]'s manifestly unreasonable decision to dismiss Petitioner from the Academy without grounds beyond those for which it had decided to issue merely warnings was an abuse of discretion. Because [the Board] abused its discretion in dismissing Petitioner, it will be ordered to reinstate him if otherwise eligible.

(*Id*. at 15, R.R. at 87.)

6

The Commission, through its chief counsel, filed a brief on exceptions to the Hearing Officer's recommendation and Petitioner filed a response. The Executive Director issued a letter that did not address the substance of the exceptions or the response thereto, but merely stated as follows:

> After review of the hearing transcript, the documentary exhibits, and the accompanying [p]roposed [a]djudication and [o]rder from Hearing Examiner . . . .:
>
> It is hereby **ORDERED** that the aforementioned Proposed [a]djudication and [o]rder directing the . . . Board to reinstate Petitioner to the . . . Academy is hereby **REJECTED**. This is deemed the [f]inal [d]ecision in this matter.
>
> This is a final decision. Pursuant to the Crime Victims Act [sic], at 18 P.S. § 11.705[3] [sic], this decision may be appealed to the Commonwealth Court in the manner provided for appeals from administrative agencies as provided in [Chapter 7, Subchapter A of the Administrative Agency Law, 2 Pa.C.S. §§ 701-704]. Note that Rule 1512(a) of the Pennsylvania Rules of Appellate Procedure [Pa.R.A.P. 1512(a)] requires that any such appeal shall be filed with the Commonwealth Court within 30 days after the entry of this final decision.

(R.R. at 100) (footnote added). Petitioner's petition for review to this Court ensued.

---

[3] Section 705 of the Crime Victims Act, Act of November 24, 1998, P.L. 882, *as amended*, 18 P.S. § 11.705, pertains to appellate review of final decisions of the Commission's Office of Victims' Services in crime victim compensation appeals. Section 705 in no way pertains to the Board or its actions.

The current version of the Board's enabling legislation, found at 44 Pa.C.S. §§ 7421-7431, and its predecessor, the repealed Sheriff and Deputy Sheriff Education and Training Act, do not themselves provide for appeals of Board action. Thus, appeals to this Court are provided for by Section 702 of the Administrative Agency Law, 2 Pa.C.S. § 702.

On appeal, Petitioner raises a single issue: whether the Executive Director's decision was supported by substantial evidence. The parties argue this point. However, upon review of the record, we conclude that the absence of findings and reasons for the Executive Director's decision impede meaningful appellate review, requiring that we remand for an amended adjudication.

Section 507 of the Administrative Agency Law requires an adjudication to "be in writing, and [] contain findings and the reasons for the adjudication." 2 Pa.C.S. § 507. An adjudication is "[a]ny final . . . decision . . . by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding . . . ." 2 Pa.C.S. § 101. While an agency head is not bound by a proposed adjudication, in rejecting a proposed adjudication and substituting his own he is not exempt from Section 507's requirement that an adjudication contain the findings and reasons for the replacement adjudication. *See Fisler v. State Syst. of Higher Educ., California Univ. of Pa.*, 78 A.3d 30, 42 (Pa. Cmwlth. 2013),

Section 507 of the Law requires that adjudications contain findings of fact that are "sufficiently specific to enable [a reviewing] court . . . to pass upon questions of law." *Henderson v. Off. of Budget,* 537 A.2d 85, 86 (Pa. Cmwlth. 1988). Where crucial findings of fact have not been made, we must remand the case to the administrative agency involved for further proceedings. *Underkoffler v. State Emp. Ret. Bd.*, 432 A.2d 319, 320 (Pa. Cmwlth. 1981). Here, we are left with an adjudication amounting to a wholesale rejection of the Hearing Officer's extensive findings, conclusions, and discussion, without any explanation for the Executive

Director's reasons for doing so.[4] We are compelled to vacate and remand rather than decide the case, as the lack of findings and reasons in an adjudication "goes to the reviewability of a decision, not its validity." *Pocono Mountain Charter Sch., Inc. v. Pocono Mountain Sch. Dist.*, 88 A.3d 275, 290 (Pa. Cmwlth. 2014).

In light of the foregoing, we vacate the adjudication of the Executive Director and remand to the Commission for further consideration and issuance of an adequate adjudication. As this case is aged, we also direct that the Executive Director's adjudication be issued within 90 days of this order.

_____

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

---

[4] Beyond its fundamental inadequacy under Section 507, the slapdash nature of the adjudication issued by the Executive Director is further betrayed by the errant citation to the appeal provision of the Crime Victims Act. *See supra* n.3.

We find this troubling because, "in addition to contravening the express will of the legislature, [it] is undesirable from the standpoint of judicial administration, in that it foists upon the [C]ourt what is essentially the function of the Executive Branch of government." *McGonigel's, Inc. v. Pa. Liquor Control Bd.*, 663 A.2d 890, 893 (Pa. Cmwlth. 1995). Further, the issuance of a reasoned decision by an agency is not only a statutory mandate, but also has due process implications. *Begis v. Indus. Bd. of Dep't of Labor and Indus.*, 308 A.2d 643, 646 (Pa. Cmwlth. 1973). Finally, this dereliction will result in further delay and expense to the parties in obtaining judicial review of an administrative decision based upon facts now six years in the past. Nevertheless, our appellate jurisdiction does not extend to factfinding or divining reasons for an agency decision, requiring remand.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Travis Day, : 
             Petitioner : 
              : 
        v. : No. 941 C.D. 2023
              : 
Pennsylvania Commission on : 
Crime and Delinquency, : 
             Respondent : 

## **O R D E R**

AND NOW, this 18th day of November, 2024, the Final Decision of the Executive Director of the Pennsylvania Commission on Crime and Delinquency is VACATED and the matter is REMANDED, with direction to issue a suitable adjudication within 90 days of this order.

      Jurisdiction is relinquished.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita